Dear Mr. Jared DeMarinis
You have requested that this Office clarify whether a candidate may serve as a chairman of a campaign finance entity other than the candidate's own political committee. You advise that, consistent with legal advice construing prior versions of the State election law, the State Board of Elections (SBE) has permitted a candidate to serve in that capacity when the position does not exercise authority or general responsibility over the conduct of the campaign. You state that the Office of State Prosecutor has questioned whether this policy is consistent with the current version of the election law.
The State election law permits a candidate to serve as chairman of the candidate's own campaign finance entity. However, language added to one of the pertinent statutory provisions of the State election law in 2002 during its recodification in the Election Law Article raises a significant question whether the General Assembly intended to bar a candidate from serving as the chairman of other political committees in all cases. Neither the statutory language nor the legislative file for the 2002 recodification gives a conclusive answer to this question. We recommend that the General Assembly clarify its intention by an appropriate amendment of the Election Law Article. Pending such legislative clarification, the SBE's current interpretation is a defensible construction of the relevant provisions. That construction may be accorded greater weight by the courts if SBE incorporates it in an interpretative regulation.
 I Statutory Framework
Under the State election law, campaign finance activity must generally be conducted through a "campaign finance entity." Annotated Code of Maryland, Election Law Article ("EL"), § 13-202(a). A "campaign finance entity" may take the form of either a personal treasurer or a political committee.[1] EL § 1-101(h). The election law recognizes four types of officers of campaign finance entities: a chairman, a treasurer, subtreasurers, and a campaign manager.
To establish a personal treasurer as a campaign finance entity, a candidate must appoint an individual to that position on an SBE form and file it with the SBE or appropriate local board.[2] EL § 13-206. To establish a political committee as a campaign finance entity, a chairman and a treasurer must be appointed. EL § 13-207. Appointment of the two other types of officers is optional. A treasurer for a campaign finance entity may appoint a subtreasurer for a specific county or political subdivision. EL § 13-211(a).[3] In addition, an individual may appoint a campaign manager by filing a designated form. EL § 13-212.
The election law sets forth some basic qualifications for the officers of a campaign finance entity. Each must be a registered voter in Maryland. EL § 13-215(a). In general, an officer of one campaign finance entity may also serve as an officer of another campaign finance entity. EL § 13-215(c). However, pertinent to your request, the statute limits a candidate's ability to assume these positions. EL § 13-215(b). In particular, with respect to the candidate's own campaign finance entity, the candidate may not act as the treasurer or subtreasurer; by implication, the candidate may act as the chairman or campaign manager of the candidate's own campaign finance entity. EL § 13-215(b)(1). With respect to any other campaign finance entity, a candidate may not act:
 1. as the campaign manager, treasurer, or subtreasurer; or
 2. in any other position that exercises general overall responsibility for the conduct of the entity.
EL § 13-215(b)(1)(ii).[4] Thus, if a candidate wishes to work for another campaign finance entity, such as the campaign of someone else, he or she may not serve in the three listed positions or "in any other position that exercises general overall responsibility for the conduct" of the campaign.
The election law also imposes specific obligations on the "responsible officers" of a campaign finance entity. In the case of a candidate who uses a personal treasurer, the responsible officers are the candidate and the treasurer. EL § 1-101(nn)(1). In the case of a political committee, the responsible officers are the chairman and the treasurer of the political committee. EL § 1-101(nn)(2). In either case, the responsible officers "are jointly and severally responsible for filing all campaign finance reports in full and accurate detail and for all other actions of the entity." EL § 13-214(a). They are also subject to sanctions for failure to carry out these responsibilities. EL § 13-331 etseq.[5]
 II Analysis
You have asked whether a candidate may serve as chairman of a campaign finance entity. With respect to the candidate's own campaign finance entity, the State election law bars a candidate from serving as treasurer or subtreasurer, but does not prohibit the candidate from serving as chairman or campaign manager. EL § 13-215(b)(1)(i). Thus, in the case of the candidate's own campaign finance entity, he or she may serve as chairman.
With respect to other campaign finance entities, the answer to your question is less straightforward. As outlined above, the first clause of EL § 13-215(b)(1)(ii) explicitly prohibits a candidate from serving as a campaign manager, treasurer, or subtreasurer of a campaign finance entity other than the candidate's own, but does not explicitly include the position of chairman in the list of prohibited offices. EL § 13-215(b)(1)(ii)1. The absence from this list of the term "chairman" — an office defined and referenced frequently in the election law — suggests that the Legislature contemplated that a candidate would serve, at least in some circumstances, as chairman of a campaign finance entity other than the candidate's own entity.
The second clause of EL § 13-215(b)(1)(ii) provides a general standard. It bars a candidate from acting "in any other position that exercises general overall responsibility for the conduct of the entity [other than the candidate's own entity]." EL § 13-215(b)(1)(ii)2. This language tracks the definition of "campaign manager" in the election law. See EL § 1-101(j) ("a person designated by a candidate, or the candidate's representative, to exercise general overall responsibility for the conduct of the candidate's political campaign"). This language appears designed to forbid a candidate from serving as a chairman, or in any other capacity however denominated, if the position exercises general overall responsibility for the entity. However, it seems unlikely that the Legislature would use this lengthy phrase to bar a candidate from acting as a chairman in all instances when it could have accomplished that end by simply adding the single word "chairman" to the list of prohibited offices in EL § 13-215(b)(1)(ii)1.
The legislative history of this phrase appears to confirm that interpretation. The quoted language was added as part of the 2002 recodification of the State election law into the new Election Law Article. Chapter 291, § 4, Laws of Maryland 2002. The Revisor's Note explains that this language was added "for clarity and for consistency with the interpretation and practice of the State Board [of Elections]." Id., pp. 2530-31.
The Revisor's Note apparently alludes to the SBE's existing practice, noted in your letter, of allowing a candidate to be chairman of a campaign finance entity other than the candidate's own when "provided the candidate does not exercise general overall responsibility for the conduct of that committee." See
State Board of Elections, Summary Guide to Maryland Candidacy and Campaign Finance Laws, 6.1 (Revised April 2003).[6] The practice is based in part on an advice letter of this Office, which construed a prior version of the election law which prohibited a candidate from, among other things, acting as the campaign manager of another political committee. Letter of Elizabeth L. Nilson, Special Assistant to the Attorney General to Richard I. Nevin, Esquire (February 21, 1990). In the situation discussed in that letter, a candidate for the local Republican central committee was selected as chairman of the political committee of a county council candidate because of her extensive political contacts" and "her name and civic reputation," but did not have authority to manage the campaign. This Office concluded that she was not prohibited from holding that position while she was also a candidate for party office, even though she shared with the committee treasurer the responsibility for reporting and disclosing campaign funds. The advice letter distinguished the situation in which a chairman actually ran a campaign and effectively functioned as a campaign manager. In that case, the letter indicated, an individual could not simultaneously serve as chairman and be a candidate for another political committee. That interpretation was also reflected in the summary guide to campaign finance laws published by SBE at the time of the 2002 code revision. See State Board of Elections, Summary Guide to Maryland Candidacy and Campaign Finance Laws, 6.1 (Revised September 2001).
Thus, viewed by itself, EL § 13-215(b)(1) does not bar a candidate from serving as chairman of another campaign finance entity. The Revisor's Note appears to confirm that conclusion. If we were to stop the analysis here, the answer to your question appears straightforward. However, we must read EL § 13-215
together with other provisions of the election law. In its recodification of the election law in 2002, the Legislature also added language to another section of the statute and that language allows for a contrary interpretation.
In particular, EL § 13-214(a) states that the "responsible officers" of a campaign finance entity "are jointly and severally responsible for filing all campaign finance reports in full and accurate detail and for all other actions of the entity." (emphasis added). A chairman of a political committee by definition is a "responsible officer" of the entity and therefore has responsibility under EL § 13-214(a) for "all other actions of the entity." If that responsibility is equated with the exercise of "general overall responsibility for the conduct of the entity" — not an unreasonable construction — the chairman is necessarily more than a figurehead with largely ceremonial duties. Under that construction, the position of chairman may never be held by a candidate.[7] EL § 13-215(b)(1)(ii)2. But this seems to contradict the apparent intent, expressed in the Revisor's Note to EL § 13-215, that the recodification would codify current SBE practice.
It is possible that the language added by the recodification effected a substantive change in the election law, even though it was part of a code revision bill. "[W]hen the issue at hand involves a recodification or code revision," a principle of statutory construction states that the code revision "is presumed to be for the purpose of clarity rather than change of meaning."Md. Div. of Labor and Industry v. Triangle General Contractors,Inc., 366 Md. 407, 422, 784 A.2d 534 (2001) (quoting Hoffman v.Key Fed. Sav. Loan Ass'n, 286 Md. 28, 37, 416 A.2d 1265
(1979)). However, this principle is a "rebuttable presumption" which disappears in the face of plain language to the contrary.See Triangle General Contractors, Inc., 366 Md. at 423-24
(deciding case under the plain meaning rule).
Resort to the Revisor's Note for EL § 13-214 does not resolve this conundrum. It states:
 [T]he reference to "all other actions of the entity" is new language added for clarity. The Election Law Review Committee calls this addition to the attention of the General Assembly.
Chapter 291, § 4, Laws of Maryland 2002, p. 2529. While the revisors typically use such language to flag matters for the Legislature's attention, we have not located anything in the legislative file that indicates the purpose of the clarification provided by this language or whether a substantive change indeed was intended.
In sum, the literal language of EL § 13-214(a) and § 13-215(b)(1), read together, appears to render a candidate ineligible to serve as chairman of a political committee other than the candidate's own committee. However, the drafters of the current versions of these provisions apparently intended to incorporate the SBE's past practice, which would permit a candidate to serve as a chairman when that position does not exercise general overall responsibility for the conduct of a campaign. Thus, although the Revisor may have suggested this additional language to the General Assembly for the purpose of clarity and consistency with the interpretation of the State Board, the language in context is ambiguous and open to at least two possible interpretations.
One possible way to resolve this question would be to construe the phrase "all other actions of the entity" in EL § 13-214(a) in a limited way to encompass only those "actions" related to campaign finance, as the phrase follows a specific reference to the obligation to "file campaign finance reports in full and accurate detail" and campaign finance law imposes other obligations on campaign finance entities in addition to the filing requirements. See, e.g., EL § 13-218(b) (disbursements may be made only in accordance with the purposes of the entity); § 13-220 (designation of campaign accounts); § 13-227 et seq.
(limitations on transfers of funds); § 13-239 (obligations with respect to anonymous contributions); § 13-247 (disposal of surplus funds). While these various legal responsibilities related to campaign finance are indeed important, they could be viewed as less than "general overall responsibility" for the campaign. In our view, SBE, as the agency charged with administering the State election law, could adopt such an interpretation, preferably in an interpretative rule that may be accorded some deference by the courts. See 75 Opinions of theAttorney General 37, 49-50 n. 11 (1990).
Ultimately, the question whether a candidate should be able to serve as chairman of another political committee is a matter of policy within the purview of the General Assembly. We recommend that the Legislature revisit these provisions and clarify whether it intends that a candidate may serve as chairman of a political committee other than the candidate's own committee.
 III Conclusion
In our opinion, the State election law permits a candidate to serve as chairman of the candidate's own campaign finance entity. However, the 2002 recodification of the election law has introduced a significant question whether the General Assembly intended to bar a candidate from simultaneously serving as the chairman of other political committees. Neither the statutory language nor the legislative file for the 2002 recodification gives a conclusive answer to this question. We recommend that the General Assembly clarify its intention by an appropriate amendment of the Election Law Article. Pending such legislative clarification, the SBE's current interpretation is a defensible construction of the relevant provisions. That construction may be accorded greater weight by the courts if SBE incorporates it in an interpretative regulation.
 J. Joseph Curran, Jr. Attorney General
 Mark J. Davis Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] A political committee is "a combination of two or more individuals that assists or attempts to assist in promoting the success or defeat of a candidate, political party, or question submitted to a vote at any election." EL § 1-101(ff). Not every political committee is a campaign finance entity; a political club does not fall within the definition of campaign finance entity. See EL § 1-101(h) (campaign finance committee includes political committees organized under Title 13 of the Election Article); EL §§ 13-207(a), 13-208(a) (exempting political clubs from organizational requirements of Title 13).
[2] The election law does not require a candidate who uses a personal treasurer to have a chairman. As we understand it, campaigns that use a personal treasurer typically name a campaign manager and a chairman is seldom appointed.
[3] In the case of a party central committee, the treasurer may appoint a subtreasurer for each precinct in a county. EL § 13-211(b).
[4] This provision is subject to two exceptions not pertinent to the general question that you pose. EL § 13-215(b)(2).
[5] For example, an individual who is required to file a campaign finance report who fails to do so may not:
 (1) be deemed to be elected to a public office or party office in this State;
 (2) take the oath or otherwise assume the duties of the office; or
 (3) receive any salary or compensation for the office.
EL § 13-333(a). Thus, in the case of a candidate who uses a personal treasurer, the candidate and the personal treasurer are subject to the sanctions of that provision for failing to file; and where a candidate uses a political committee, the chairman and the treasurer are subject to the same sanctions.
[6] The General Assembly has directed the SBE to summarize the campaign finance laws in a summary guide that is distributed to candidates. EL § 131-03.
[7] Of course, as noted above, there is no prohibition against a candidate serving as chairman of his or her own political committee. *Page 195